IN THE MATTER OF DAVID E. EVRARD, JUDGE OF THE PERRY CIRCUIT COURT.

[No. 1172S154. Filed November 1, 1974.]

---

424

*John D. Clouse, Claude Bates, Ralph Roberts,* Attorneys for *William E. Brady,* petitioner.

*J. David Huber, Ralph Zoerker,* Attorneys for *David E. Evrard,* respondent.

HUNTER, J.—This case is before us on a petition for removal of respondent, David E. Evrard, Judge of the Perry Circuit Court. This action was formally commenced by the filing of a Petition for Removal by petitioner William E. Brady, Prosecuting Attorney of the 70th Judicial Circuit on November 14, 1972. The record in this case indicates that the filing of the petition for removal was the progeny of an agreement entered into by petitioner Brady and respondent Evrard. This

agreement, which we strongly condemn, arose in the following manner.

Respondent judge was named as defendant in some twenty (20) criminal affidavits filed by petitioner. Upon certification of such charges by respondent, we appointed a special judge. On August 17, 1972, petitioner appeared and filed motions of *nolle prosequi* on sixteen (16) of the affidavits for the reason of insufficient evidence. The special judge dismissed these cases. On October 27, 1972, the date of the agreement, respondent still stood charged under at least four (4) affidavits. Additionally, affidavits had been filed against respondent's wife and father. Respondent's father had filed an action for malicious prosecution against one of the complaining witnesses. These facts are included only to illuminate the situation confronting the parties to this action. In the words of petitoner's attorney, the agreement was the result of "counsel on both sides endeavoring to find some way out of the morass." The record indicates this course of action was mutually agreed upon by the parties.

The "way out" was envisioned and drafted by respondent's attorneys. In essence, petitioner agreed to *nolle prosequi* all charges remaining against respondent, respondent's wife and respondent's father. Respondent and his wife agreed not to file civil actions against petitioner. Respondent's father agreed to drop his action for malicious prosecution then pending against a complaining witness. The parties then concluded:

> "It is the understanding of the parties and it is their intent that the judicial processes of the Perry Circuit Court and proper justice to said individuals and the public will be better served if all of the facts surrounding said accusations of the Prosecuting Attorney against David E. Evrard, Margaret Evrard and Fred J. Evrard were presented to the Supreme Court of the State of Indiana for disposition as it may deem fit and proper in accordance with such procedures as may be prescribed by said Court.

> "David E. Evrard, Margaret Evrard and Fred J. Evrard hereby recognize that in submitting said issues before

the Supreme Court of the State of Indiana, they and each of them are giving up certain constitutional rights which they have as defendants in said criminal actions in order to avoid further harrassment [sic] by said Prosecuting Attorney and in the honest belief that in so doing it will be beneficial in maintaining the continued respect for the operation of the Perry Circuit Court." Petitioner's Exhibit A.

Pursuant to this agreement, petitioner then filed his petition for removal on November 14, 1972. Petitioner alleged that respondent had violated Ind. Code § 3-1-32-48 by filing a declaration of candidacy for the office of judge, knowing that part of the declaration was falsely made; that he violated Ind. Code § 3-1-32-10 by voting in an election while not qualified; that he violated Ind. Code § 3-1-32-13, by voting in a precinct of which he was not a bona fide resident; and that he violated Ind. Code § 35-1-29-1, as an accessory to his wife's commission of bigamy. Petitioner asked us to assume jurisdiction in this matter to remove the respondent. Petitioner concluded his prayer for relief with a request for "all other just and proper relief."

We accepted jurisdiction and appointed a hearing officer. Respondent moved for summary judgment on the petition for removal. A hearing was held on January 20, 1973. Respondent's attack was two-fold. First, respondent, relying upon Article 7, section 13 of the Indiana Constitution, argued that as a circuit judge he was exempt from removal except upon conviction of corruption or other high crime. Since there had been no conviction for any of the crimes alleged, a petition for removal would not lie. Second, when confronted with the language of the agreement to the effect that in submitting this matter to the Supreme Court they were giving up certain constitutional rights, respondent disavowed any waiver of Article 7, section 13. The hearing officer agreed with respondent's contentions and granted summary judgment on the petition for removal on February 21, 1973. However, the hearing officer also concluded:

"5.    That jurisdiction over the disciplining of Judge Evrard is hereby retained and a hearing will be held concerning such matter."

This conclusion finds support in the record and was, undoubtedly, understood by respondent's counsel who stated:

"That rule 4.4 [Appellate Rule] does not provide solely for the removal of judges, *it also provides for disciplining of judges.* We had no knowledge that they were going to file a petition. We knew what their interest was but we had no knowledge of what they were going to file, what form it was going to take. If anybody pulled a bag over their head they pulled it over themselves, when they went in and laid everything on the line on a petition for removal. *They didn't ask for discipline.* They didn't ask for it and all we agreed to do, is as the agreement says, and we will have to rely upon the agreement. *We submit these matters in controversy to the Supreme Court to deal with as they see fit.* We didn't put it in the box of removal. They put it in the box. And that rhetorical question was

[Mr. Clouse: '. . . but what is the purpose of this agreement, just to prove they have outsmarted us, or what?' Transcript p. 10]

we still are going to honor the agreement to submit these matters to the Supreme Court if they will submit them in a form that the Constitution doesn't prohibit, and let the Supreme Court take action on them."   (Emphasis added)

Hence, respondent admitted that the agreement entered into with petitioner *should* extend to discipline of respondent if proper. Thus, respondent's objection to the petition was merely to its *form.* Yet a review of the record leads to but one conclusion: that respondent's objection to the form of the petition, like the earlier agreement he drafted, was only interposed to delay the judicial process. Thus, after respondent's statement set out above, counsel for petitioner asked respondent:

Mr. Bates:  "Would you agree to amending it now as to disbarment?"

Mr. Huber:  "No.  I don't think that is before this Court at this point."

Mr. Bates:  "I think that if you were to agree to it, that would clarify the other thing."

Mr. Huber: "No, we would not."

Mr. Bates: "Well, if you didn't agree to disbarment, or didn't agree to removal, what were you agreeing to? That is the question."

Mr. Huber: "We agreed, in the agreement, Your Honor, to submit it, I don't know if we have to answer that question to make it clear to Your Honor."

While counsel for petitioner did not specifically ask for amendment to encompass discipline, it is evident that it would have been futile for petitioner to file an amended petition in this case. Moreover, when the parties invoked the jurisdiction of this court, it was not for them to subsequently describe the limits thereon. Petitioner's request for "all other relief just and proper" was adequate notice to respondent that this Court might fashion relief other than removal. Respondent's attempted claim of surprise or prejudice is not convincing.

The correctness of the above view is further confirmed by the events transpiring after the granting of summary judgment. On May 12, 1973, another hearing was held. At this hearing respondent's counsel stated that respondent would resign January 1, 1974, in exchange for dismissal of the action against him, *provided* that the hearing officer would order petitioner and his attorneys to hold in confidence all information in their custody. Even the hearing officer appeared stunned by respondent's attempt to bring an end to disciplinary proceedings and adjourned the hearing to consult this Court as to the propriety of such an order. We approved the acceptance of a resignation if tendered by October 1, 1973, but we emphatically stated that we had no authority to grant respondent immunity from prosecution or any other action which might be instituted against him. When the hearing officer informed respondent of our position at a hearing on May 22, 1973, respondent withdrew his offer to resign. Implicit in respondent's posture throughout these proceedings is

his underlying attempt to avoid the legal process, however denominated.

On June 6, 1973, the hearing officer filed additional findings of fact and conclusions of law, in response to petitioner's motion to reconsider. The hearing officer found "There has been no petition filed in the name of the State to discipline the Respondent Judge." The hearing officer then stated as a conclusion of law, "The Supreme Court should not retain jurisdiction of this case under the theory of discipline because to do so would be tantamount to approving such agreement [the agreement referred to above]." In accepting jurisdiction, we did not do so on the basis of the agreement. The hearing officer erred in his conclusion, for our jurisdiction was invoked pursuant to a petition for removal— not an agreement between the parties. Once invoked, our jurisdiction could not be unilaterally limited by the form of the petition if any other grounds exist upon which relief could be granted. In this case, those grounds exist. This agreement, coupled with respondent's additional attempts to circumvent the proceedings reviewed above, when considered in conjunction with the allegations contained in the petition for removal, dictates the necessity for some form of disciplinary relief pending any further disposition on the merits. Far from approving the agreement, we agree with the hearing officer who condemned it. But unlike the hearing officer, we consider the agreement as evidence which substantiates the continuance of disciplinary jurisdiction in this matter. We must examine the bases of our authority and responsibility.

The hearing officer concluded that conviction of "corruption or other high crime" is a condition precedent to a petition for removal. The hearing officer stated that his conclusion was compelled by Article 7, section 13, of the Indiana Constitution, which provides:

"Any *Judge* of the Circuit Court or *Prosecuting Attorney*, who shall have been convicted of corruption or other high crime, may, on information in the name of the State, be

removed from office by the Supreme Court, *or in such other manner as may be prescribed by law."* (Emphasis added)

Article 7, section 13, if broadly read and strictly limited to that section, might conceivably support the view that such conviction is an absolute jurisdictional prerequisite. If the latter interpretation is correct, then the circuit judge in Indiana enjoys a constitutional immunity unknown to the Justices of the Supreme Court and Judges of the Court of Appeals and judges of all other statutorily created courts. To avoid the bar of Article 7, section 13, to any disciplinary proceeding instituted under the constitutional powers of this Court, it is only necessary to limit the operation of the first part of that section to the situation to which it clearly extends—removal. Removal within the context of this portion of section 13 is obviously synonymous with impeachment. Moreover, we note that the second part of section 13 "in such other manner as may be prescribed by law" presents an additional basis for removal. Viewed in this manner, a constitutional limitation upon the power of this Court to remove circuit judges for impeachable offenses does not infringe upon our other constitutional powers to discipline members of the bench—including circuit judges.

Our general power to discipline members of the bench is found in Article 7, section 4, which provides in pertinent part:

"The Supreme Court shall have no original jurisdiction except in . . . *discipline,* removal and retirement *of* justices and *judges.* . . ." (Emphasis added)

This jurisdictional grant to discipline extends to all judges without exception.

While this constitutional grant of disciplinary power over judges is clear, it may be argued that the General Assembly has attempted to restrict the exercise of that power. Proponents of this view place reliance upon the conspicuous absence of circuit judges in the legisla-

tive catalog[1] of statutory courts subject to the commission on judicial qualifications in disciplinary matters. Such reliance is misplaced, for our jurisdictional grant is constitutional and extends to all judges; any attempt by the legislature to so limit the disciplinary power vested in this Court by the Constitution would be void.

In addition to Article 7, section 4, which the hearing officer failed to invoke as a vehicle for continuing jurisdiction under the original petition, the hearing officer also overlooked Article 7, section 7. That section provides that a circuit judge ". . . shall hold his office for the term of six years, if he so long behaves well." This section provides an additional limitation upon the office of circuit judge, apart from criminal conviction. The standard "if he so long behaves well" is given concreteness when read in terms of our Code of Judicial Conduct and Ethics. Thus read, the limits of Article 7, section 7, are enforced by the exercise of our disciplinary power under Article 7, section 4, and the second part of Article 7, section 13.

As this Court stated in *State* v. *Redman,* (1915) 183 Ind. 332, 109 N.E. 184, in commenting upon Article 7, section 12, now section 13:

> "The constitutional provision for the removal of judges and prosecuting attorneys is so distinctly different from provisions for a like purpose in other constitutions and in relation to the removal of other public officers in our own State that precedents are few and of little value in the solution of the second and third questions raised. The terms used are the broadest and give no indication in

---

1. Ind. Code § 33-2.1-6-1, Burns § 4-8001 provides:
"It is the purpose of this chapter [§§ 4-8001—4-8030] to provide that judges of superior, probate, juvenile or criminal courts in certain counties as set forth in section 3 [§ 4-8003] of this chapter shall be subject to disciplinary action for the grounds and in the manner set forth in this chapter. It is the further purpose of this chapter to provide that the commission on judicial qualifications for the Supreme Court and Court of Appeals, and the members thereof, shall constitute the commission on judicial qualifications for judges of superior, probate, juvenile and criminal courts in certain counties as set forth in section three [§ 4-8003] of this chapter."

themselves of any intention on the part of the framers of the Constitution to limit the conviction which would authorize a removal of a judge to one by an Indiana court for a violation of the laws of the State which had denounced certain designated acts as high crimes or corruption and penalized them as such, nor to limit the conviction which would work a removal to one for high crimes or corruption committed or done as an official or during his term of office. As to other public officers, the Constitution provides for impeachment, or, that they may be removed from office in such manner *as may be prescribed by law.* Constitution, Art. 6, §§ 7, 8. But as to judges and prosecuting attorneys, the Constitution specifies for what causes they may be removed from office and provides a more summary way than impeachment for such removal. A purpose of special concern was thus exhibited for this branch of governmental power, the judiciary, to keep it clean and its offices occupied by those unstained. * * * *It must be remembered that this provision is for the protection of the people in that branch of their government which affects them most vitally and its construction should, when permissible and consonant with reason, assure that protection.* So far as the preservation of the sanctity and the efficiency of the courts of justice in the circumstances of a judge convicted of a crime is concerned, what difference can there be whether one has been convicted in another state after election and induction into office and there sentenced to imprisonment for life for a murder committed prior to election in that state, or whether he has been convicted in this State after election and induction into office and here sentenced to imprisonment for life for a murder committed in this State during his term of office? There is the same dishonor to the office and the same physical obstruction to the judge's discharging its duties." (Emphasis added) 332 at 339-340.

As the hearing officer found, this is not yet a case for removal under Article 7, section 13, as that section has been applied.

We presently apply constitutional language not present in our Constitution when *Redman* was decided. Nevertheless,

> "It must be remembered that this provision is for the protection of the people in that branch of their government which affects them most vitally and its con-

struction should, when permissible and consonant with reason, assure that protection." It is evident that the interest of the citizens of Perry County will best be protected not by further delay in this case, but by the deliberate determination of this matter. Pending the determination on the merits of this case, to protect the public interest in the efficient administration of justice, and to enable the respondent judge to adequately prepare his response unhampered by the continuing burden of his court calendar and without disruption, we presently emphasize our continuing jurisdiction and appoint a judge *pro tempore*. He shall carry out all the duties of the Perry Circuit Court during the pendency of this matter.

In summation, we must clearly delineate the authority, responsibilities and duties implicit in sections 4, 7 and 13 of Article 7. Our disciplinary power under those sections includes not only suspension, with or without pay, removal and retirement of judges and prosecutors, but also all other disciplinary sanctions. We note that the power which we now exercise to appoint a judge *pro tempore* might in another case be properly exercised by this Court upon review of a petition for disciplinary action. The fact that we did not exercise this power initially in no way negates our present responsibilities to do so.

Pursuant to our continuing jurisdiction, we hereby terminate the appointment of The Honorable William B. Miller as hearing officer and appointed in his place and stead The Honorable Saul I. Rabb of the Marion County Criminal Court, as hearing officer for the purpose of conducting further hearings in this proceeding. The hearing officer is hereby directed to make special findings of fact only and to submit his findings to this Court for ultimate disposition. This opinion shall be sufficient authority for The Honorable Saul I. Rabb to qualify and to set a date for hearing as soon as possible after January 1, 1975.

We hereby notify respondent that we will appoint a judge *pro tempore* of the Perry Circuit Court, effective December

1, 1974, to carry out all functions and duties of the court during the pendency of this proceeding or until further order of this Court. He shall be paid for his services as judge *pro tempore* in the same amount and in the same manner as the respondent.

We also advise the parties that a special prosecutor will be appointed in this matter to take any and all appropriate actions not inconsistent with this opinion. This opinion shall be sufficient authority for said special prosecutor, after being so named, to qualify immediately upon the taking of an oath and to assume his duties in this matter. We now direct Mr. Cecil L. Melvin, chief investigating officer of the Supreme Court Disciplinary Commission, to assist said prosecutor in an objective manner.

For all the participating Justices of this court, Arterburn, C.J., not participating.

NOTE.—Reported at 317 N.E.2d 841.